**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| EASTERN SAVINGS BANK, FSB, | Civil Action No. |
| Plaintiff, | 3:13 - CV - 1816 (CSH) |
| v. | |
| STEPHEN V. ST. GERMAIN, DARLENE L. ST. GERMAIN, WINDHAM HOSPITAL , and CONNECTICUT HOUSING FINANCE AUTHORITY, | **JULY 22, 2014** |
| Defendants. | |

<u>MEMORANDUM, RULINGS ON PENDING MOTIONS IN LIGHT OF AUTOMATIC BANKRUPTCY STAY, AND ORDER</u>

<u>HAIGHT, Senior District Judge:</u>

I.  <u>INTRODUCTION</u>

On December 6, 2013, Plaintiff Eastern Savings Bank, FSB ("Plaintiff" or "Eastern") commenced this foreclosure action against defendants Steven V. St. Germain and Darlene L. St. Germain (the "St. Germain Defendants"), seeking to foreclose on the mortgage for their residential real property located at 422 Jerusalem Road, Windham, Connecticut (the "Windham property"). According to Eastern, on or about September 26, 2007, the St. Germain Defendants borrowed from Eastern the original principal sum of $115,000.00 and executed and delivered to Eastern a promissory note in that amount.  Doc. 1, ¶ 6.  Also, on September 26, 2007, in order to secure that note, the St. Germain Defendants executed and delivered to Eastern a mortgage on the Windham property, which was then recorded in the Windham Land Records on October 15, 2007.  *Id.*, ¶ 7. Eastern alleges that the St. Germain Defendants have defaulted under the note and mortgage and

1

"have failed and neglected to cure the default." *Id.*, ¶ 9.  Eastern has therefore "elected to accelerate the entire unpaid balance due under the [n]ote to be immediately due and payable, together with interest, pre-acceleration late charges, advancements for taxes and insurance, and all costs of collection." *Id.*, ¶ 10.  The sum total of these amounts, calculated as of October 18, 2013, was "$115.767.37." *Id.*

In this foreclosure action, Plaintiff also includes as named defendants Windham Hospital and the Connecticut Housing Finance Authority, both of which allegedly possess "liens or encumbrances" on the Windham property which are "subsequent" in right to the mortgage upon which Eastern seeks to foreclose.  *Id.*, ¶ 13.  Specifically, Windham Hospital allegedly "claims to have an interest in the property pursuant to a judgment lien in the amount of $3,420.75 plus costs, dated February 25, 2009," *id.,* ¶ 12.A.; and Connecticut Housing Finance Authority, allegedly "claims to have an interest in the [Windham] property pursuant to a mortgage in the original principal amount of $23,016.00[,] dated July 18, 2013," *id*., ¶ 13.B.   Because neither of these defendants has appeared or answered in this action, Eastern moved for and the Clerk entered a default against each of them for "failure to plead or otherwise defend," Fed. R. Civ. P. 55(a) [Doc. 12].  To date, no default judgment has been sought by Eastern against these parties pursuant to Rule 55(b), Fed. R. Civ. P.

Meanwhile, the St. Germain Defendants remain "the owners of the equity of redemption" of the Windham property and are "in possession" of it. *Id.*, ¶ 14.   Eastern estimates the value of the property at $145,000.00 and  claims that, "[i]f appropriate," Eastern is entitled to "a deficiency judgment" in addition to foreclosure of the mortgage.  *Id.*, ¶ 18.

## II.    BANKRUPTCY FILING - Automatic Stay pursuant to  11 U.S.C. § 362(a)

On June 30, 2014, the St. Germain Defendants filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut (Bankruptcy Petition No. 14-21288).   In light of that filing, this action has been automatically stayed against them pursuant to 11 U.S.C. § 362(a).[1]   *See* Doc. 19 ("Suggestion of Bankruptcy").[2]   The filing of a bankruptcy petition operates as a stay of, *inter alia*, the following:  "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;" "any act to obtain possession of the property of the estate;" "any act to create, perfect or enforce any lien against the property of the estate;" or "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case."  11 U.S.C. § 362(a)(2)-(5).

## III.    RULINGS ON PENDING MOTIONS & SCOPE OF AUTOMATIC STAY

On May 16, 2014, Eastern filed two motions which remain pending in this action: (1) a motion for default against the St. Germain Defendants for failure to plead [Doc. 14] and (2) a motion

---

[1]    As  the Second Circuit has  articulated, "the automatic stay  provides the debtor with 'a breathing spell from his creditors."  *In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir. 1990) (quoting *Teachers Ins. & Annuity Ass'n of America,* 803 F.2d at 64 (2d Cir.1986) and citing *In re Petrusch*, 667 F.2d 297, 299 (2d Cir.1981), *cert. denied*, 456 U.S. 974 (1982)).  "In addition, the automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas."

[2]    The Court  clarifies that  in the "Suggestion of Bankruptcy" [Doc. 19],  Plaintiff mis-labeled the St. Germain Defendants' bankruptcy petition as a Chapter *12* petition when, in fact, it was a Chapter *13* petition.   That fact is, however,  of no significance to these proceedings.

for judgment by strict foreclosure and order for possession of the Windham property [Doc. 15].[3] The St. Germain Defendants were served with the summons and complaint on January 9, 2014 [Doc. 7 & 8], but as of the date of Eastern's motions for default and strict foreclosure, had not answered or responded.

On June 6, 2014, in response to Eastern's motions for default and strict foreclosure, the St. Germain Defendants filed an Answer to the Complaint [Doc. 17].[4]   They did not, however, file opposing memoranda to Eastern's motions, as the Court had specified by Order on June 4, 2014. *See* Doc. 16 ("Pursuant to Local Rule 7(a), the Defendants will have 21 days to file any opposing memoranda, up to and including June 6, 2014.").   Eastern replied to the Answer, contending that, in light of the St. Germain Defendants' failure to file "opposing papers" to Eastern's motions, as ordered by this Court, the motions should be granted. *See* Doc. 18 (Eastern's "Reply") at ¶¶ 4-5 ("the pleading filed by the defendants was not an 'opposing memoranda' as ordered by the Court" and "the answer filed by the defendants is not sufficient to prevent the entry of judgment of foreclosure").

Eleven days later, while the motions for  default and strict foreclosure remained *sub judice*,

---

[3]   "Strict  foreclosure, rather than foreclosure by sale, is appropriate when the fair market value of real property is less than the amount of the mortgage debt." 59ACJS Mortgages § 881 (Westlaw update June 2014).  "The decision whether to order a strict foreclosure or a sale lies within the discretion of the court." *Nat'l City Mortg. Co. v. Stoecker*, 92 Conn.App. 787, 794 (2006), *cert. denied*, 277 Conn. 925 (2006).  "In Connecticut, strict foreclosure is the rule, foreclosure by sale the exception." *Nat'l City Mortg. Co.,*  92 Conn. App. at 793. "Most significantly, the effect of strict foreclosure is to vest title to the real property absolutely in the mortgagee and to do so without any sale of the property." *Id.*  "A judgment of strict foreclosure, when it becomes absolute and all rights of redemption are cut off, constitutes an appropriation of the mortgaged property to satisfy the mortgage debt." *Id.* (citation and internal quotation marks omitted).

[4]   In their Answer, the St. Germain Defendants "admitted" that they had executed the note for the principal amount of $115,000 and delivered it to Eastern.   *See* Doc. 17 ("Answer"), ¶ 6. They also admitted that Eastern had provided them with written notice that they were in default under the note and mortgage but they had "failed and neglected to cure the default." *Id.*, ¶ 9.

the St. Germain Defendants filed their Chapter 13 petition in bankruptcy and the automatic stay arose pursuant to 11 U.S.C. § 362(a).  *See* Doc. 17 ("Suggestion of Bankruptcy").  Due to the stay with respect to the St. Germain Defendants, Plaintiff's pending motion for entry of default [Doc. 14] is hereby DENIED without prejudice to renewal if and when the bankruptcy stay is lifted.  Moreover, Plaintiff's "Motion for Judgment by Strict Foreclosure and Order for Possession" [Doc. 15] is also DENIED without prejudice to the extent that it seeks to wrest both title and possession of the Windham property from the St. Germain Defendants without any sale of the property being conducted.[5]  The stay of this action regarding the St. Germain Defendants will continue until the bankruptcy case concludes or the bankruptcy court lifts the automatic stay.

With respect to the defaulting non-bankrupt co-defendants, Windham Hospital and Connecticut Housing Finance Authority, "a suit against a codefendant is not automatically stayed by the debtor's bankruptcy filing." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir.2003) (quoting 3 Collier on Bankruptcy § 362.03[3][d] (15th ed.2002)).  *See also Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994) (*per curiam*) ("This Court has recognized that the automatic stay is applicable only to proceedings 'against,' 11 U.S.C. § 362(a)(1), the debtor.")*;  Teachers Ins. & Annuity Ass'n of America v. Butler*, 803 F.2d 61, 65 (2d Cir.1986) ("It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants.") (collecting cases);  *In re Rubenstein*,105 B.R. 198, 201 (Bankr. D.Conn. 1989) ("In general, the automatic stay does not apply to proceedings against nondebtors.").

However, the Court recognizes that there are limited  and  unusual  circumstances in which

---

[5]    Eastern may file a notice that it seeks to  renew  its  motions for default and strict foreclosure against  the  St. Germain Defendants upon termination of the bankruptcy proceedings or lifting of the automatic stay.

an extension of the stay to a non-bankrupt co-defendant is proper – *e.g.*, "when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd.,* 321 F.3d at  287.  *See also  Teachers Ins. & Annuity Ass'n of America*, 803 F.2d at 65 (automatic stay may extend to non-debtor if  the extension "contributes to the debtor's efforts to achieve rehabilitation" or the debtor and non-bankrupt co-defendant are so closely related that the liability of the non-debtor may be imputed to the debtor"); *In re Johns–Manville Sales Corp*, 33 B.R. 254, 263–64 (S.D.N.Y.1983) (court "may extend the automatic stay under Section 362 of the Bankruptcy Code to stay and enjoin proceedings or actions by or against non-debtors where such actions would interfere with, deplete or adversely affect property of the [debtor's] estates"); *In re Metal Center*, 31 B.R. 458,  462 (Bankr. D.Conn. 1983) ("[w]here . . . a debtor and a nondebtor are so bound by statute or contract that the liability of the nondebtor is imputed to the debtor by operation of law, then the Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code").

As Judge Krechevsky ably summarized in the *Matter of Colonial Realty Company*, 122 B.R. 1 (Bankr. D. Conn. 1990):

> "[W]here a non-debtor's interest in property is intertwined . . . with that of a bankrupt debtor [and] [i]f action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt[cy] estate, then such action should be barred by the automatic stay." *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2nd Cir.1987)[,] *cert. denied*[,] 485 U.S. 1035 [(1988)] (Landlord's notice of termination of prime lease violated automatic stay where if prime lease terminated, debtor's subtenancy would be destroyed.). Code § 362(a)(3) stays "any action, *whether against the debtor or third-parties*, to obtain possession or to exercise control over property of the debtor." *A.H. Robbins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.1986) (emphasis in original)[,] *cert. denied*[,] 479 U.S. 876 [(1986)].

122 B.R. at 5 (parallel citations omitted).

As set forth *supra*, it is indisputable that the automatic stay bars further litigation of this foreclosure action against the St. Germain Defendants at this time.  The question, however,  arises as to whether the co-defendants' interests in the Windham property are sufficiently "intertwined" with those of the bankrupt debtors (*i.e.*, the St. Germain Defendants) such that action – in this case potential default judgement – against the non-debtors would have an adverse impact on the bankruptcy estate.

Eastern has included the judgment lienholder Windham Hospital and subsequent mortgagee Connecticut Housing Finance Authority in this foreclosure action in the interest of resolving all parties' claims with respect to title and possession of the Windham property in one proceeding.  As set forth *supra*, the Clerk has entered default against both of them pursuant to Rule 55(a), Fed. R. Civ. P.  *See* Doc. 12 (Order granting Motion for Default Entry, Doc. 11).  Therefore, if the action is allowed to proceed against the non-bankrupt defendants, Eastern may move for entry of default judgment pursuant to Rule 55(b), Fed. R. Civ. P.

 In general, one may note that neither of these two defendants, who are essentially junior lienholders, is  directly liable to Eastern.  Rather, all remaining parties in this action *claim interests in the Windham property* against the St. Germain Defendants. After all, both co-defendants possess claimed interests in the Windham property, but neither has any direct relationship with Eastern or appears to have acted directly to harm Eastern in any way.  In sum, the interests of Eastern, Windham Hospital, and Connecticut Housing Finance Authority are aligned, albeit competing, claims against the St. Germain Defendants and, specifically, the Windham property.  Whether named as "plaintiff" or "defendant," "mortgagee" or lienholder," or for that matter "Montague" or "Capulet," all three parties claim interests in the same real property in possession of the debtors, the St. Germain

Defendants.[6]

With that in mind, it is important to remember that "[t]he operation of the [automatic] stay [pursuant to § 362] does not necessarily depend on the debtor having either a legal or equitable interest in the property as *it applies to property* merely *in the debtor's possession*." *Matter of Colonial Realty Co.*, 122 B.R. 1, 4 (Bankr. D. Conn. 1990) (emphasis added). Here, the Windham property at issue is in the *possession* of the St. Germain Defendants and thus, pursuant to the automatic stay, no foreclosure actions or liens may be enforced against it. *See, e.g.*, *In Re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir.1987) ("mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger protection of the automatic stay"), *cert. denied*, 485 U.S. 1035 (1988). It also follows that the automatic stay serves to bar actions of junior lienholders as well as those of senior lienholders. *See, e.g., In re Capital Mortg. & Loan, Inc.*, 35 B.R. 967, 971 (Bankr. E.D.Cal. 1983) ("In general, in a foreclosure action, all junior lien[-] holders of record should be included;" "[h]owever, it is well established that bankruptcy law provides that the filing of a bankruptcy petition operates as a stay of any act to enforce a lien against property in custody of the bankruptcy court.").

In addition to the legality of continuing to pursue the present action during the automatic stay, one may query the feasibility of proceeding on claims "inextricably intertwined" with, or actually part of, the foreclosure claim which is now stayed against the St. Germain Defendants. *See, e.g., M.E.S., Inc. v. M.J. Favorite Elec., Inc.*, No. 08-CV-183 (JG)(JMA), 2010 WL 959604, at *4 (E.D. Pa Mar. 15, 2010) (court exercised its "discretion to stay the remainder of the case" due to the

---

[6] As Juliet astutely declared, courtesy of the Bard, "a rose [b]y any other name would smell as sweet." William Shakespeare, *Romeo and Juliet*, Act II, Scene I.

"inextricably intertwined" claims – thereby staying the litigation "in its entirety"– and reminded the parties that any of them "wishing to proceed with this litigation may seek an order from the Bankruptcy Court lifting the automatic stay" under 11 U.S.C. § 362(d)).

## IV.   CONCLUSION AND ORDER

This case is hereby STAYED against the St. Germain Defendants pursuant to 11 U.S.C. § 362(a) unless or until the bankruptcy court concludes the proceedings on their Chapter 13 petition or lifts the automatic stay.  Eastern is reminded, however, that any "party in interest" may seek an order from the bankruptcy court to lift the stay pursuant to the provisions of 11 U.S.C. § 362(d).

With respect to the defaulting non-debtor defendants in this action, the Court hereby ORDERS that on or before **August 22, 2014**, plaintiff Eastern shall file a brief with this Court stating its position with respect to whether the automatic stay should be extended to these defendants under 11 U.S.C. § 362(a) or the case should proceed against them.[7]  If the Court determines that the case must be stayed in its entirety, it will be placed on the suspense docket until the St. Germain Defendants' bankruptcy claim is resolved by the bankruptcy court.  Plaintiff may also, if so advised, take the necessary steps to voluntarily withdraw the present action without

---

[7]     If the defaulting non-bankrupt co-defendants Windham Hospital and Connecticut Housing Finance Authority appear in the case prior to August 22, 2014 and contemporaneously file motions to set aside their defaults pursuant to Rule 55(c), Fed. R. Civ. P., the Court will accept briefs from them regarding the scope of the automatic stay.  The scope of the stay will directly affect these defaulting parties in that, absent extension of the stay to them, Eastern may seek default judgments against them pursuant to Fed. R. Civ. P. 55(b).  In appropriate circumstances, "courts throughout this Circuit have ruled upon, or allowed to stand, pleadings and motions filed while the filing party was in default." *Success Village Apartments v. Amalgamated Local 376*, 34 F.R.D. 36, 38 (D.Conn. 2006) (collecting cases).  However, acceptance of said brief(s) from the defaulting parties by the Court will in no way alter their defaulted status.  To open the defaults, these parties must each file a motion to set aside the default for "good cause," Fed. R. Civ. P. 55(c), and receive a favorable ruling by the Court.

prejudice to renewal should the bankruptcy stay be lifted.  *See* Fed. R. Civ. P. 41(a)(1)(A).

      The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
      July 22, 2014

                       */s/Charles S. Haight, Jr.*
                       CHARLES S. HAIGHT, JR.
                       Senior United States District Judge